Justice Laurie McKinnon, dissenting.
¶44 Fundamental to this case are the definition of compensatory damages and the Gore ratio-"the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." State Farm Mut. Auto. Ins. Co. v. Campbell , 538 U.S. 408, 418, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585 (2003) (citing BMW of N. Am. v. Gore , 517 U.S. 559, 575, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809 (1996) ). A precise definition of compensatory damages is critical here-absent an award of compensatory damages, we may not uphold an award of punitive damages. Folsom , ¶ 52. The reissuance of stock certificates and dividends is not monetary compensation and, therefore, is not compensatory damages. Nevertheless, the interest awarded on the dividends here-a minor sum compared to the value of the stock and dividends-was.
¶45 Punitive damages may be predicated in-part on John Jr.'s interest award, but the punitive damages must also comport with Farmers' due process rights. Because of the comparatively modest value of John Jr.'s compensatory damages (only the interest award), the ratio between the compensatory *234 damages and punitive damages-a common indicator of an award's constitutionality-would almost certainly denote a violation of Farmers' substantive due process rights. Nevertheless, in ***87 appropriate cases such as this, courts should compare the punitive damages award to both actual and potential harm. Here, that may have been the value of John Jr.'s stock and dividends. Accordingly, I would reverse and remand this case with instructions to the District Court to reevaluate the punitive damages award based on the ensuing analysis.
¶46 1. Compensatory damages may only be based in money.
¶47 Stock certificates and money are distinct. The language of § 27-1-202, MCA, which grants the right to compensatory damages, is plain: "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money , which is called damages." (Emphasis added.) Clearly, the statute does not allow the party at fault to compensate the aggrieved party with some other asset like inventory, equipment, or real property-let alone stock certificates. Money is "[t]he medium of exchange authorized or adopted by a government as part of its currency." Money , Black's Law Dictionary (10th ed. 2014); see also § 30-1-201(2)(y), MCA (defining money in Montana's version of the Uniform Commercial Code as "a medium of exchange currently authorized or adopted by a domestic or foreign government"). Unlike money, stock certificates represent ownership of equity in a corporation; they grant their holder the right to participate in the corporation's management; and they often allow their holder to vote on corporate matters, receive dividends, and share in corporate assets upon liquidation. Stock , Black's Law Dictionary (10th ed. 2014). The Court attempts to obfuscate these differences by citing numerous sources that, while explaining the overall goal of compensatory damages (compensation), ignore the statutory mechanism for actually compensating aggrieved parties. Opinion, ¶ 15. Only one asset may satisfy an award for compensatory damages-money. Section 27-1-202, MCA. The Court's conclusion to the contrary is unsupported by any cognizable theory of compensatory damages.[1]
***88 ¶48 An action brought under § 30-8-414, MCA, is in many ways functionally similar to an action for the return and delivery of personal property under § 27-1-432, MCA.[2] The reissuance of stock is not monetary compensation any more than an order for the return of a bicycle is. It is a form of specific relief through which a court may compel one party "to do that which ought to be done"-delivery of the personal property to the person entitled to its possession. Section 27-1-402, MCA ; see § 27-1-432, MCA ("A person having the possession or control of a particular article of personal property of which the person is not the owner may be compelled specifically to deliver it to the person entitled to its immediate possession."). This Court has never held that, within a remedy for the return of specific personal property, the personal property itself is compensatory damages. Moreover, this Court has never held *235 that compensatory damages may be anything but money.
¶49 Further review of the statute's remedial procedure evinces the same conclusion. The Official Comments to § 30-8-414, MCA, state that historically, when an issuer wrongfully registered a security transfer, some courts allowed the rightful owner to elect between either an equitable action to compel issue of a new security or an action for damages. Section 30-8-414, MCA, Official Comment 1; see 12 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5551, at 426 (Jennifer L. Berger & Carol A. Jones eds., 2004). Under pre-U.C.C. law, it was "well-settled ... that if a corporation wrongfully refuse[d] to recognize and register a valid transfer of stock, and issue a new certificate to the transferee, the shareholder [could] maintain a bill in equity to compel it to do so." 12 Fletcher, supra , § 5519, at 319-20 (emphasis added). Section 30-8-414, MCA, confines a rightful owner's remedy under the statute to reissuance of like securities-an equitable remedy of specific relief. Section 30-8-414, MCA, Official Comment 1 ("[Title 30, chapter 8] does not allow such election. The true owner of a certificated security is required to take a new security....").
***89 Moreover, the statute only allows the rightful owner to recover the value of the stock (in lieu of reissuance) as a last resort in one situation: where reissuance of the securities would exceed the amount the issuer has corporate power to issue and identical securities are not reasonably available for purchase. Sections 30-8-220, -414, MCA.
¶50 Statutes can codify equitable remedies. Even if a statutory remedy displaces a remedy previously available to courts in equity, the statutory remedy itself can still be equitable. Many statutes in Montana codify equitable remedies. Some examples include:
• specific performance, § 27-1-411, MCA ;[3]
• injunctions, §§ 27-19-101 through -406, MCA ;
• abatement as a remedy for public and private nuisances, §§ 27-30-202 and -301, MCA ;
• partition, § 70-29-101, MCA ;[4]
• mortgage foreclosure proceedings, § 71-1-222, MCA ;[5] and
• constructive trusts, § 72-38-123, MCA.[6]
Like these statutes, § 30-8-414, MCA, codified an equitable remedy.
¶51 Furthermore, statutory relief comes in both equitable and monetary forms. Whether a statute provides a remedy of compensatory damages depends on the nature of the relief a court ultimately provides through the statute. Thus, to determine whether a statutory remedy provides compensatory damages, a court needs only to ask whether the statutory remedy is monetary compensation given to a party "who suffers detriment from the unlawful act or omission of another." See § 27-1-202, MCA ; see also Dobbs, Law of Remedies § 3.1 ("The stated goal of the damages remedy is compensation of plaintiff for legally recognized losses."). For example, both an action for the return and ***90 delivery of personal property and an action for stock reissuance allow a court to order compensatory damages for the value of the property in limited scenarios.[7] Although inapplicable to *236 the case at issue, these remedial provisions illustrate how the same statute may afford differing types of relief; in a particular case, the type of statutory relief a District Court ultimately provides depends on how it applies the statute.
¶52 The Court also reasons that reissuance of stock under § 30-8-414, MCA, is different than a court-ordered return of a unique piece of property because it authorizes the issuer to provide "a like certificated or uncertificated security." Opinion, ¶ 24 (quoting § 30-8-414, MCA ) (emphasis in original). Thus, the Court implies that where a court orders a defendant to provide a plaintiff with similar property as restitution instead of the plaintiff's original, specific property, such a remedy qualifies as compensatory damages.
¶53 The Court's line of reasoning is incompatible with the facts of the case: Farmers returned to John Jr. the specific, original stock he was entitled to-a specific remedy. Regardless, even remedies that allow one party to restore the other by providing fungible, equivalent property are not compensatory damages. They are equitable.[8] Once ***91 again, compensatory damages must be paid in money. Section 27-1-202, MCA. The Court states, comparing the stock to money, the stock "looks like a duck, walks like a duck, and quacks like a duck," so the award "was a duck." Opinion, ¶ 24. But this ugly duckling is simply not a duck-it is a swan.
¶54 More nuanced, however, are the "payments or distributions" that § 30-8-414(2), MCA, compels an issuer to provide to an entitled party who did not receive them due to a wrongful registration. Payments and distributions received by a stock owner often take the form of a cash dividend. When they do, § 30-8-414(2) essentially requires the issuer to provide money to the entitled party, and that provision may or may not be compensatory damages.
¶55 While a party may only satisfy an award of compensatory damages with money, not all monetary awards are compensatory damages. See Dobbs, Law of Remedies § 3.1 ("The damages award is not the only money award courts make. Courts may also award restitution in money; they may order money payments in the exercise of 'equity' power." (internal footnotes omitted) ). The key distinction between a judgment for compensatory damages and an order to deliver specific funds is, once again, whether the remedy is monetary compensation given to a party "who suffers detriment from the unlawful act or omission of another." See § 27-1-202, MCA. For example, a plaintiff asserting a preexisting ownership right in money taken by or transferred to the defendant seeks specific, equitable relief-return of the money. Instead of seeking monetary compensation for the property's value and a claim for the defendant to pay damages out of the defendant's general funds, the plaintiff seeks the return of the specific funds she is entitled to. See Colleen P. Murphy, Money as a "Specific" Remedy , 58 Ala. L. Rev. 119, 134-37, 146-52 (2006).
*237 ¶56 The United States Supreme Court has differentiated between compensatory damages and equitable relief for the return of specific funds through a series of cases analyzing the Employee Retirement Income Security Act (ERISA). ERISA-covered employee benefits plans frequently pay covered medical expenses, but the terms of the plans often include a subrogation clause requiring a participant to reimburse ***92 the plan if she later recovers money from a third party for her injuries. Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan , 577 U.S. ----, 136 S.Ct. 651, 655, 193 L.Ed.2d 556 (2016). ERISA allows plan fiduciaries to file civil suits "to obtain ... appropriate equitable relief" to enforce a covered employee benefits plan, often by enforcing equitable liens or constructive trusts against settlement funds. ERISA of 1974 § 502(a)(3), 29 U.S.C. § 1132(a)(3). ERISA limits the relief a fiduciary may seek to equitable relief. ERISA of 1974 § 502(a)(3), 29 U.S.C. § 1132(a)(3). Fiduciaries may not bring a civil action for compensatory damages, so in ERISA cases, the distinction between equitable relief and compensatory damages is significant.
¶57 In Great-West , the Supreme Court held that when a fiduciary sought enforcement of an equitable lien against third-party settlement funds the defendants did not actually possess, the fiduciary sought the legal remedy of damages instead of equitable relief. Great-West Life & Annuity Ins. Co. v. Knudson , 534 U.S. 204, 208-09, 213-14, 122 S.Ct. 708, 712, 714-15, 151 L.Ed.2d 635 (2002). The Court reasoned the plan could only seek to enforce an equitable lien where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Great-West , 534 U.S. at 213, 122 S.Ct. at 714. Next, in Sereboff , the Court held the underlying remedies a plan strived for were equitable remedies because it sought "recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [plan participant's] assets generally." Sereboff v. Mid Atl. Med. Servs. , 547 U.S. 356, 363, 126 S.Ct. 1869, 1874, 164 L.Ed.2d 612 (2006). Finally, in Montanile , a plan participant received settlement funds but largely dissipated them on nontraceable items. Montanile , 577 U.S. at ----, 136 S.Ct. at 656. The Court held that a fiduciary could not recover dissipated funds from a plan participant's general assets because, at that point, the remedy sought was essentially for compensatory damages. Montanile , 577 U.S. at ----, 136 S.Ct. at 662. It observed,
a plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car). A defendant's expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien. The plaintiff then may have a personal claim against the defendant's general assets-but recovering out of those assets is a legal remedy, not an equitable one.
***93 Montanile , 577 U.S. at ----, 136 S.Ct. at 658.
¶58 Applying these principles to the case at hand, I would hold the dividends that § 30-8-414(2), MCA, required Farmers to pay John Jr. were not compensatory damages. As the dividends on John Jr.'s stock accrued while his stock ownership was in dispute, Farmers opened and maintained a separate account for them. Had Farmers dissipated the dividends on nontraceable items, John Jr. could have sought monetary compensation for their value. However, Farmers never dissipated the funds, and they were traceable at the time the District Court ordered Farmers to provide them to John Jr. John Jr. did not seek a claim against Farmers' general assets; instead, he sought to recover specific funds in Farmers' possession. Therefore, in this situation, § 30-8-414(2), MCA, functioned to provide John Jr. with the specific property-the dividends-that he was entitled to instead of monetary compensation for their value.
¶59 Notably, however, the District Court also awarded interest on the dividends to John Jr. In an action to recover personal property, § 27-17-401(1), MCA, allows the claimant to recover possession of the property (or its value if delivery is impossible) along *238 with "damages for the detention." The statute does not define what, precisely, "damages for the detention" are.[9] However, Restatement of Restitution § 53(1) states: "A person who is liable to make restitution of property or its value is liable for supplemental enrichment in the form of interest, rent, or other measure of use value, to the extent that such further enrichment is either realized in fact or appropriately presumed." The property's use value includes "ordinary income or accretion in respect of the original asset (dividends on shares, interest on bonds, rent on land, a calf born to a cow)." Restatement of Restitution § 53 cmt. c. Therefore, the wrongful possessor of stock belonging to another party must return both the stock and any cash dividends that accrued while ***94 the wrongful possessor held the stock.
¶60 If a wrongful possessor returns property, courts typically cannot also award interest as damages for the property's detention by virtue of the property's value alone. Most property does not produce additional value; before a court may impose further liability beyond delivery of the property (e.g., the value of interest or rent), the original owner must show the wrongful possessor realized interest, rent, proceeds, consequential gains, or some other form of use value.
¶61 Nevertheless, in the case of money wrongfully held by a conscious wrongdoer, "[l]iability for the [money's] use value ... may be imposed by an award of prejudgment interest, consistent with applicable statutes." Restatement of Restitution § 53(4). "The function of prejudgment interest in such a case is simultaneously to compensate the claimant for the interim loss of use of the damage award, and to eliminate the unjust enrichment (and the incentive to delay) that would otherwise result from the defendant's retention of the same funds." Restatement of Restitution § 53, cmt. e. In Montana, when one party breaches an obligation to pay money to another, the latter party's detriment is the amount owed with interest. See § 27-1-312, MCA. The overriding purpose of awarding interest in addition to the amount owed is to fully compensate the injured party for losing the use of her money. Byrne 228 Mont. at 391, 741 P.2d at 1343.
¶62 In the present case, the dividends were not compensatory damages because they were traceable, specific personal property belonging to John Jr. See Montanile , 577 U.S. at ----, 136 S.Ct. at 658. However, unlike the dividends, the interest was an award of compensatory damages: it is monetary compensation given to John Jr. for damages for the detention of his money and John Jr.'s loss of its use value while Farmers wrongfully held it. See § 27-1-202, MCA ; § 27-17-401, MCA. Accordingly, only the interest award can be categorized as compensatory damages.
¶63 Courts may not award punitive damages absent an award of compensatory damages. Section 27-1-220(1), MCA ; Folsom , ¶ 52. Because I conclude the interest was an award of compensatory damages, I agree with the Court that punitive damages were available in this case. However, the value of compensatory damages I would find is only a fraction of the value the Court has. The interest award is minimal compared to the value of the stock and dividends. Therefore, although I agree with the Court's decision to uphold the punitive damages, my evaluation of John Jr.'s compensatory damages necessitates an analysis-distinct from the Court's-of whether the ***95 punitive damages award comports with Farmers' due process rights. *239 ¶64 2. Punitive damages may be predicated in-part on potential harm.
¶65 In Montana, a judge or jury may award punitive damages "for the sake of example and for the purpose of punishing a defendant." Section 27-1-220, MCA ; see Seltzer v. Morton , 2007 MT 62, ¶ 180, 336 Mont. 225, 154 P.3d 561 (affirming Montana has a "legitimate interest in punishment and deterrence" of highly reprehensible conduct). However, courts may not award punitive damages that violate a party's right to substantive due process. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." Campbell , 538 U.S. at 416, 123 S.Ct. at 1519. When determining whether a punitive damages award is grossly excessive, this Court considers the United States Supreme Court's three Gore "guideposts":
(1) the degree of reprehensibility of the defendant's misconduct;
(2) the disparity, or ratio, between the actual or potential harm suffered by the plaintiff and the punitive damages award; and
(3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.
McCulley v. U.S. Bank , 2015 MT 100, ¶ 44, 378 Mont. 462, 347 P.3d 247 (citing Campbell , 538 U.S. at 418, 123 S.Ct. at 1520 (citing Gore , 517 U.S. at 575, 116 S.Ct. at 1598 ) ).
¶66 Preliminarily, I address the third guidepost because, like the defendant in McCulley , there are not clear monetary civil penalties for Farmers' conduct. McCulley , ¶ 55. The only civil remedy for wrongful stock registration is reissuance of the stock under § 30-8-414, MCA. Otherwise, considering Farmers' knowingly wrongful transfer of John Jr.'s stock, the comparable penalty is a criminal one-a fine of up to $50,000. Section 45-6-301(6), (7)(c), MCA (criminal penalties for embezzlement); see also § 45-2-311, MCA (criminal responsibility of corporations). Nevertheless, § 27-1-220(3), MCA, places a cap on punitive damages of either $10 million or 3% of the defendant's net worth. See McCulley , ¶ 55. The statutory cap provides "an indication of what the Legislature views as 'grossly excessive.' " McCulley , ¶ 55. The punitive damages here neither exceed $10 million nor 3% of Farmers' net worth. Therefore, I would not hold the punitive damages excessive under the third Gore guidepost.
¶67 Next, the first guidepost: in Gore , the Supreme Court stated, "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the ***96 defendant's conduct." Gore , 517 U.S. at 575, 116 S.Ct. at 1599 ; accord McCulley , ¶ 45. This Court examines the degree of reprehensibility of a defendant's conduct by considering whether
the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.
McCulley , ¶ 45 (quoting Campbell , 538 U.S. at 419, 123 S.Ct. at 1521 ).
¶68 While John Jr. brought claims against Farmers for emotional distress, the District Court ultimately declined an award of compensatory damages for them. Thus, the record indicates any threat posed by John Jr.'s loss of his stock and dividends was solely economic, and Farmers' conduct-which posed only a pecuniary threat to John Jr.-did not evince a reckless disregard to the health or safety of others. Furthermore, the District Court made no factual findings as to whether John Jr. had financial vulnerability or otherwise lacked financial sophistication. See McCulley , ¶ 48.
¶69 Nevertheless, the District Court found that Farmers' conduct was, far from an isolated incident, a pattern of wrongdoing that deprived John Jr. of a substantial asset for nearly five years. The District Court's findings are based on substantial evidence in the record and are not clearly erroneous. The deprivation John Jr. suffered "was the result of intentional malice, trickery, or deceit," not "mere accident." See McCulley , ¶¶ 51-52. Farmers maliciously backdated a stock transfer *240 form and repeatedly misrepresented to John Jr. that the transfer occurred two days before his father's death. With flagrant disregard for its own policies, Farmers intentionally and deliberately transferred all of John Jr.'s shares without his knowledge or permission; ignored John Jr.'s rights as a shareholder for nearly five years, paying no attention to his repeated demands for the stock's return; and refused to acknowledge its own wrongdoing, even stating "So what if [the stock] was transferred to the wrong person ... [n]othing happened to it, except it took a trip to Seattle and came back." Therefore, while Farmers' conduct posed only economic harm, its conduct was nonetheless reprehensible.
¶70 Finally, the second guidepost requires courts to evaluate the ratio "between the actual or potential harm suffered by the plaintiff and the punitive damages award." Campbell , 538 U.S. at 418, 123 S.Ct. at 1520. Most often, courts accomplish this with a limited comparison between punitive damages and compensatory damages. See, e.g. , ***97 Gore , 517 U.S. at 582, 116 S.Ct. at 1602 (holding unconstitutional a punitive damages award 500 times the amount of "actual harm as determined by the jury"); Campbell , 538 U.S. at 426, 123 S.Ct. at 1524-25 (reversing a punitive damages award 145 times the amount of a $1 million compensatory damages award and finding the compensatory damages were "substantial" and "complete compensation"); McCulley , ¶¶ 53-54 (finding constitutional a 5:1 ratio between punitive and compensatory damages); Seltzer , ¶¶ 189, 196-99 (upholding a district court's reduction of a punitive damages award to comport with a ratio of 9:1 where compensatory damages were "substantial"). However, the ratio also permits consideration of potential damages. Gore , 517 U.S. at 582, 116 S.Ct. at 1602.
¶71 In a pre- Gore plurality opinion, the Supreme Court upheld a ratio of 10:1 between punitive damages and actual and potential damages in TXO Prod. Corp. v. Alliance Res. Corp. , 509 U.S. 443, 459, 466, 113 S.Ct. 2711, 2721, 2724, 125 L.Ed.2d 366 (1993) (plurality). TXO, attempting to pressure Alliance to renegotiate an oil and gas royalty agreement between the two companies, manufactured a title deficiency regarding a tract of land and advanced a baseless action against Alliance seeking declaratory judgment for certain oil and gas rights after negotiations fell through. A jury awarded Alliance $19,000 in actual damages (the cost of defending the action) along with $10 million in punitive damages against TXO. TXO , 509 U.S. at 447-51, 113 S.Ct. at 2714-17. A plurality of the Court wrote that, while a disparity between actual and punitive damages could result in an unconstitutional punitive damages award, any constitutional analysis should take into account both actual and potential harm: "While petitioner stresses the shocking disparity between the punitive award and the compensatory award, that shock dissipates when one considers the potential loss to respondents, in terms of reduced or eliminated royalties payments, had petitioner succeeded in its illicit scheme." TXO , 509 U.S. at 462, 113 S.Ct. at 2722. Alliance argued that, had TXO accomplished its scheme, Alliance's potential damages from reduced royalties would have amounted to between $5 million and $8.3 million. The plurality did not determine precisely what the potential damages were, but it nonetheless held, "even if the actual value of the 'potential harm' to respondents is not between $5 million and $8.3 million, but is closer to $4 million, or $2 million, or even $1 million, the disparity between the punitive award and the potential harm does not, in our view, 'jar one's constitutional sensibilities.' " TXO , 509 U.S. at 462, 113 S.Ct. at 2722 (quoting ***98 Pac. Mut. Life Ins. Co. v. Haslip , 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991) ).
¶72 The Court could not reach a majority regarding the proper framework for comparing punitive damages to potential harm. Notwithstanding, the Court unanimously agreed punitive damages could be predicated on potential harm to the victim.[10]
*241 ¶73 Gore and its progeny have continued to support the theory that potential harm may be predicated in-part on potential harm to the victim. In Gore , the Supreme Court struck down a 500:1 ratio between punitive damages and actual and potential harm. The Court found that, unlike the victim in TXO , the victim in Gore had not suggested he was threatened with any additional potential harm.[11]
***99 Gore , 517 U.S. at 582, 116 S.Ct. at 1602. The Court stated,
[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award. Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach.
Gore , 517 U.S. at 582, 116 S.Ct. at 1602 (emphasis in original).
¶74 In Campbell , the Supreme Court once again instructed courts reviewing punitive damages to consider "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." Campbell , 538 U.S. at 418, 123 S.Ct. at 1520. The Campbell court was critical of ratios in the double-digits but, relying on Gore , left open the possibility that higher ratios "may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.' " Campbell , 538 U.S. at 425, 123 S.Ct. at 1524 (quoting Gore , 517 U.S. at 582, 116 S.Ct. at 1602 ). The Court cautioned, however, that the converse was also true: "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."[12]
***100 Campbell , 538 U.S. at 425, 123 S.Ct. at 1524. Nevertheless, *242 it concluded, "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." Campbell , 538 U.S. at 425, 123 S.Ct. at 1524.
¶75 Finally, in Philip Morris USA v. Williams , 549 U.S. 346, 354, 127 S.Ct. 1057, 1063, 166 L.Ed.2d 940 (2007), the Supreme Court limited potential harm that could support an award of punitive damages to potential harm to the plaintiff alone, not third parties. Although Philip Morris limited the scope of potential harm, its opinion reaffirmed that potential harm to the plaintiff may support an award of punitive damages. See Philip Morris , 549 U.S. at 354, 127 S.Ct. at 1063 ("We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the potential harm the defendant's conduct could have caused. But we have made clear that the potential harm at issue was harm potentially caused the plaintiff ." (internal citations omitted; emphasis in original) ).
¶76 Under the guidance of TXO , Gore , Campbell , and Philip Morris , a number of state and federal courts have also held potential harm may predicate punitive damages awards.[13] If there are any real ***101 caveats, they appear to be that: (1) the record should factually support the value of potential harm the factfinder considered, and (2) the record should show the factfinder based the punitive damages in-part on the potential harm.[14] *243 ¶77 In the present case, the District Court awarded John Jr. compensatory damages in the form of interest on his dividends of $1,119.67. The District Court awarded punitive damages of $1,100,000. Comparing John Jr.'s compensatory damages to his punitive damages alone yields a ratio of 982:1. This ratio clearly exceeds the single-digit ratios the Supreme Court has held most often mark the outermost ***102 limit of due process. See Campbell , 538 U.S. at 425, 123 S.Ct. at 1524.
¶78 Most at stake throughout this litigation, however, was John Jr.'s stock. John Jr.'s compensatory damages-the interest on his dividends-was minimal compared to the value of his stock. Farmers first wrongfully transferred John Jr.'s stock in February 2011 after the death of his father. Farmers subsequently refused to reissue John Jr. his stock for nearly five years, even as the stock drastically increased in value. Had Farmers succeeded in permanently transferring his stock, John Jr. may have lost its full value. Because John Jr. did not actually lose the full value of his stock, Farmers' egregious actions resulted in only a small amount of economic damages to John Jr., and the monetary value of any noneconomic harm is difficult to determine here. See Gore , 517 U.S. at 582, 116 S.Ct. at 1602.
¶79 Therefore, based on the current record, this case appears to be one in which potential harm should factor into an award of punitive damages. However, the District Court-here the factfinder-has not yet found whether the record factually supports a value for potential harm; what the value of any potential harm would be, considering among other things, the stock's fluctuating value over time; and has not stated whether punitive damages are based in-part on any potential harm. The District Court should reconsider the punitive damages award in light of the fact that the interest award is the only compensatory damages award, and it should give the parties the opportunity to argue the question of potential harm. I would reverse and remand the case with instructions that the District Court do so.
¶80 Finally, Farmers contends the punitive damages award is unsupported by the punitive damages factors under § 27-1-221(7)(b), MCA. When a judge acts as the factfinder when issuing an award of punitive damages, the judge must clearly state his reasons in findings of fact and conclusions of law, demonstrating consideration of the factors listed in § 27-1-221(7)(b), MCA :
(i) the nature and reprehensibility of the defendant's wrongdoing;
(ii) the extent of the defendant's wrongdoing;
(iii) the intent of the defendant in committing the wrong;
(iv) the profitability of the defendant's wrongdoing, if applicable;
(v) the amount of actual damages awarded by the jury;
(vi) the defendant's net worth;
(vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
(viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
(ix) any other circumstances that may operate to increase or ***103 reduce, without wholly defeating, punitive damages.
¶81 Other than factors four and seven, I have already addressed the District Court's consideration of the punitive damages factors *244 in my analysis of the Gore guideposts. The District Court's thorough findings of facts and conclusions of law demonstrate the court clearly found the reprehensibility of Farmers' conduct (i.e., factors one, two, and three) to be controlling in this case. Regarding factor four, the District Court noted Farmers' misconduct was unlikely driven by any significant profit motive, "other than to avoid litigation with Janice ..."; and regarding factor seven, the District Court found no evidence of any previous award of punitive or exemplary damages against Farmers based upon the same act. However, Farmers' lack of a profit motive or a history of misconduct does not "reduce the high level of reprehensibility already established by the other aspects of [Farmers'] misconduct." See Seltzer , ¶ 174. Further, any potential harm Farmers' conduct posed John Jr. would be a circumstance that could operate to increase punitive damages, fitting under factor nine. That potential harm is the only factor that requires further evaluation by the District Court in this case.
¶82 In conclusion, I disagree with the Court's misguided holding that stock reissuance may be construed as compensatory damages. Moreover, I disagree with the contention that anything other than money may serve as compensatory damages. Instead, I would hold the District Court's only award of compensatory damages was the interest on John Jr.'s dividends. However, the measure of John Jr.'s interest award may not be representative of the true potential harm Farmers' conduct posed to him. Because punitive damages may be based in-part on potential harm, the District Court should evaluate whether the punitive damages here may be based on something more than the interest on John Jr.'s dividends-possibly, the total value of his stock and dividends. Accordingly, I would reverse and remand the case with instructions that the District Court reevaluate the punitive damages award based on the foregoing analysis of compensatory damages and potential harm.
Justice Beth Baker and Justice Jim Rice join in the dissenting Opinion of Justice McKinnon.
BETH BAKER, J.
JIM RICE, J.

E.g. , Dan B. Dobbs & Caprice L. Roberts, Law of Remedies , § 3.1 (3d ed. 2018) (hereinafter "Dobbs, Law of Remedies ") ("The damages remedy is a judicial award in money, payable as compensation to one who has suffered a legally recognized injury or harm."); see also, e.g. , Mertens v. Hewitt Assocs. , 508 U.S. 248, 255, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993) ("[W]hat petitioners in fact seek is nothing other than compensatory damages -monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief." (emphasis in original) ); Restatement of the Law, Torts 2d § 902 (Am. Law Inst. 1979) (" 'Damages' means a sum of money awarded to a person...."); Damages in Tort Actions § 1.01 (Matthew Bender) (" 'Damages' is the term used to denote the amount awarded as compensation for loss...."); Damages , Black's Law Dictionary (10th ed. 2014) ("Money claimed by, or ordered to be paid to, a person as compensation for loss or injury.").

A claimant entitled to the immediate possession of personal property may seek specific relief for its return, whereby courts may compel the opposing party to specifically deliver the personal property to the claimant. Sections 27-1-401, -402, -432, MCA. Operating similarly, § 30-8-414(2), MCA, compels an issuer to deliver like certificated or uncertificated securities to a person entitled to them.

See Boyne USA, Inc. v. Spanish Peaks Dev., LLC , 2013 MT 1, ¶ 64, 368 Mont. 143, 292 P.3d 432 ("Specific performance constitutes an equitable remedy....").

See Britton v. Brown , 2013 MT 30, ¶ 27, 368 Mont. 379, 300 P.3d 667 ("The right to partition real property is essentially equitable in nature...." (internal quotations omitted) ).

See Whitefish Credit Union v. Prindiville , 2015 MT 328, ¶¶14-15, 381 Mont. 443, 362 P.3d 53 ("mortgage foreclosure proceedings are in the equity jurisdiction of the courts" (internal quotations omitted) );

See LeMond v. Yellowstone Dev., LLC , 2014 MT 181, ¶¶ 46-47, 375 Mont. 402, 336 P.3d 345 ("A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it....").

In an action for the return and delivery of personal property, "in case a delivery cannot be had," a court may issue a judgment for the value of the property. Section 27-17-401, MCA. Furthermore, the property's wrongful possessor has a duty "to return the property in as good condition as the property was when possession was taken" by her. Section 27-17-402, MCA. If the property becomes "materially injured or lessened in value by use or otherwise" before its return, the original owner may undertake an action "for the value thereof." Section 27-17-403, MCA. Likewise, § 30-8-404, MCA, provides for monetary compensation in limited scenarios. The statute allows the stock's rightful owner to recover the value of the stock where reissuance would exceed the amount the issuer has corporate power to issue and identical securities are not reasonably available for purchase. Sections 30-8-414, -220, MCA. Central to each remedy are compensatory damages-the ability of the "person who suffers detriment from the unlawful act or omission of another" to "recover from the person in fault a compensation therefor in money." Section 27-1-202, MCA. Therefore, in these limited cases, these statutes provide a remedy of compensatory damages.

The Restatements of the Law 3d, Restitution and Unjust Enrichment § 54 (Am. Law Inst. 2011) (hereinafter "Restatement of Restitution") states that, generally, a party who has transferred money or other property to another pursuant to an invalid transaction is entitled to recover the property by recession and restitution. Rescission requires a mutual restoration in which each party restores the other's property, "to the extent such restoration is feasible." Restatement of Restitution § 54(2). A party may seek their specific personal property or "the fungible equivalent." Restatement of Restitution § 54 cmt. f. In the case of securities, the "fungible equivalent" includes equivalent shares from the same corporation, Restatement of Restitution § 54 illus. 8. Although providing a fungible equivalent is a remedy using substitute property, the remedy is not for compensatory damages because it is not compensation in money given to a party who suffers a detriment.

In this Court's pre-MCA jurisprudence, we held that damages for the wrongful detention of property include interest, but we only included interest when plaintiffs sought damages for the value of their property. See Wilber v. Wilber , 63 Mont. 587, 588-89, 207 P. 1002, 1002-03 (1922) (holding, in an action to recover the value of farm equipment and livestock, that the court may award interest for the wrongful detention of property); Webster v. Sherman , 33 Mont. 448, 459, 84 P. 878, 881-82 (1906) (holding, in an action to recover the value of horses, livestock, and other property, "Our Code does not define the measure of damages in a case of this character; but, upon reason, it would appear to be analogous to the action in conversion, and that the rule applicable in such an action should be applied"; therefore, "damages for detention" include "interest on the amount recovered from the date of seizure of the property to the time the verdict was returned").

Justices Scalia and Thomas concurred with upholding the punitive damages but disagreed with the notion that there is a substantive due process right that punitive damages be reasonable; nevertheless, they approved of the plurality's decision to include potential harm in its comparison between actual and punitive damages: "today we decide that a 10-to-1 ratio between punitive damages and the potential harm of petitioner's conduct passes muster-calculating that potential harm, very generously, to be more than 50 times the $19,000 in actual damages that respondents suffered." TXO , 509 U.S. at 470-72, 113 S.Ct. at 2726-27 (Scalia, J., with Thomas, J., concurring) (internal citations omitted). Justices O'Connor, White, and Souter, while dissenting for other reasons, also agreed with considering potential harm to the victim in a punitive damages analysis:
I have no quarrel with the plurality that, in the abstract, punitive damages may be predicated on the potential but unrealized harm to the victim, or even on the defendant's anticipated gain. Linking the punitive award to those factors not only substantially furthers the State's weighty interests in deterrence and retribution, but also can be traced well back in the common law.
TXO , 509 U.S. at 484, 113 S.Ct. at 2734 (O'Connor, J., with White and Souter, JJ., dissenting). Justice Kennedy did not dispute whether punitive damages could be supported by potential harm, but he felt the potential harm at issue may have been too imprecise to include in the analysis; nevertheless, he agreed with upholding the award based on the degree of reprehensibility of TXO's conduct. TXO , 509 U.S. at 468-69, 113 S.Ct. at 2725-26 (Kennedy, J., concurring).

The Court also reasoned that TXO suggested an upper constitutional ratio of 10:1. Gore , 517 U.S. at 581, 116 S.Ct. at 1602 ("Thus, in upholding the $10 million award in TXO, we relied on the difference between that figure and the harm to the victim that would have ensued if the tortious plan had succeeded. That difference suggested that the relevant ratio was not more than 10 to 1."). Notably, had TXO not included potential harm in its ratio, the ratio would have been 526:1, a higher ratio even than Gore . See TXO , 509 U.S. at 459, 113 S.Ct. at 2721. Since Gore , the Supreme Court has construed a 10:1 ratio as the likely ceiling for constitutionally permissible ratios. Campbell , 538 U.S. at 425, 123 S.Ct. at 1524 ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, or, in this case, of 145 to 1." (internal citations omitted) ).

At times in both Campbell and Gore , the Court used the ratio between punitive damages and compensatory damages and the ratio between punitive damages and actual and potential harm interchangeably. In either case, the Court did not specify whether the ratio only should include compensatory damages, and it did not clarify whether Campbell and Gore were departing from TXO . See Campbell , 538 U.S. at 424-26, 123 S.Ct. at 1524-25 ; Gore , 517 U.S. at 580-83, 116 S.Ct. at 1601-03. Limiting the denominator in the appropriate ratio to compensatory damages alone clearly results in a higher ratio overall. However, the Court has acknowledged that potential harm may support greater punitive damages under either approach. Thus, the distinction is nominal. In Gore , for example, the Court contemplated that potential damages may be included in the denominator of a ratio between punitive damages and harm, but it simultaneously stated low awards of compensatory damages may support a higher ratio if particularly egregious acts resulted in only small amounts of economic damages (i.e., potential harm may support either a greater denominator in the ratio or potential harm may support higher ratios overall ). Gore , 517 U.S. at 582, 116 S.Ct. at 1602 ; cf. Campbell , 538 U.S. at 424-25, 123 S.Ct. at 1524. The Court left open the question of which analysis lower courts should use. Nevertheless, the result is the same-when appropriate, courts may use potential harm to support punitive damages awards.
Because the Supreme Court has yet to analyze a case where potential harm supports a higher ratio between punitive damages and compensatory damages, I rely on its original analysis from TXO : there, the Court included potential harm in the ratio's denominator to reach a 10:1 ratio between punitive damages and actual and potential harm. See Gore , 517 U.S. at 581, 116 S.Ct. at 1602 ("Thus, in upholding the $10 million award in TXO , we relied on the difference between that figure and the harm to the victim that would have ensued if the tortious plan had succeeded. That difference suggested that the relevant ratio was not more than 10 to 1."). Following the Court's TXO analysis, instead of using the potential harm to John Jr. (the value of his stock and dividends) to justify a greater ratio between punitive damages and compensatory damages, I include the value of the potential harm in the denominator for the ratio.

E.g. , Mathias v. Accor Economy Lodging, Inc. , 347 F.3d 672, 677 (7th Cir. 2003) (justifying a large ratio between punitive and compensatory damages in-part because "the compensable harm done was ... difficult to quantify"); DiSorbo v. Hoy , 343 F.3d 172, 187 (2d Cir. 2003) (stating the use of a ratio was "not the best tool" where punitive damages compared to nominal damages yielded "a staggering 650,000-to-1 ratio" (internal quotations and citations omitted) ); Holt v. Pennsylvania , 2015 WL 4944032, at *32 n. 58, 2015 U.S. Dist. LEXIS 109311, *127 n. 58 (E.D. Pa. 2015), rev'd in part on other grounds 683 Fed. App'x. 151 (3rd Cir. 2017) ("We are reminded that in analyzing the second guidepost it is not purely the difference between the actual harm and the punitive damages that is at issue; rather, we must also consider the 'potential harm.' " (quoting Campbell , 538 U.S. at 418, 123 S.Ct. at 1520 ) ); Shannon v. Sasseville , 684 F.Supp.2d 169, 177-178 (D. Me. 2010) (upholding punitive damages for a defendant's particularly egregious act because it produced "noneconomic damages from psychological trauma likely to persist for years to come"); Kimble v. Land Concepts, Inc. , 353 Wis.2d 377, 845 N.W.2d 395, 409-10 (2014) (holding potential harm may support a punitive damages award, but potential harm must not merely be "speculative"); Weinstein v. Prudential Prop. & Cas. Ins. Co. , 149 Idaho 299, 233 P.3d 1221, 1255-56 (2010) (distinguishing potential harm from deterrence but recognizing punitive damages may be predicated on potential harm to the plaintiff); Simon v. San Paolo U.S. Holding Co., Inc. , 35 Cal.4th 1159, 29 Cal.Rptr.3d 379, 113 P.3d 63, 71-72 (2005) (determining the value of potential harm to the plaintiff for a comparison to punitive damages); In re New Orleans Train Car Leakage Fire Litigation 795 So.2d 364, 386 (La. Ct. App. 2001) (assessing punitive damages relative to not only actual harm, but also potential harm, because had a train car leaking flammable gas exploded, "whole city blocks of a residential area could have been destroyed").

In TXO , the dissent rested its disagreement on two arguments: (1) the record contained insufficient evidence regarding the potential harm of TXO's conduct for the Court to include an estimate for it in the Court's comparison of harm to punitive damages; and (2) even if the record had contained sufficient evidence of the potential harm, the jury instructions did not instruct the jury to consider potential harm when considering a punitive damages award. TXO , 509 U.S. at 484-89, 113 S.Ct. at 2733-36 (O'Connor, J., with White and Souter, JJ., dissenting) ("The question is not simply whether this Court might think the award appropriate in light of its estimate of potential harm. The question is also whether the jury might have relied on such an estimate ...." (emphasis in original) ); see also TXO , 509 U.S. at 467-69, 113 S.Ct. at 2725-26 (Kennedy, J., concurring in part and concurring in the judgment) (disagreeing with the plurality's contention that the record supported consideration of potential harm: "[A] jury is bound to consider only the evidence presented to it in arriving at a judgment. Justice O'Connor demonstrates that the record in this case does not contain evidence, argument, or instructions regarding the potential harm from TXO's conduct...."). The Wisconsin Supreme Court has set a similar condition for predicating punitive damages on potential harm. Kimble , 845 N.W.2d at 409-10 (holding potential harm may support a punitive damages award, but potential harm must not merely be "speculative").